## In re VIRGIN.

(District Court, S. D. Georgia, W. D.   June 15, 1915.)

1. CHATTEL MORTGAGES ☞60—EXECUTION—ATTESTATION BY EMPLOYÉ OF MORTGAGEE.
   That a mortgage to a bank was attested by an employé of the bank as a notary public does not render it invalid under the law of Georgia.
   [Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 115; Dec. Dig. ☞60.]

2. WORDS AND PHRASES—"ATTESTATION."
   "Attestation" is the act of witnessing the actual execution of a paper and subscribing it as a witness (citing Words and Phrases, Attest).

3. CHATTEL MORTGAGES ☞60—EXECUTION—ATTESTATION.
   Under Civ. Code Ga. 1910, § 3257, which requires a mortgage to be attested before a notary public or justice of a court, it is not necessary that the notary should attach a formal certificate of acknowledgment.
   [Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 115; Dec. Dig. ☞60.]

4. BANKRUPTCY ☞184—LIENS—VALIDITY OF CHATTEL MORTGAGE.
   Under Civ. Code Ga. 1910, § 3260, which provides that "mortgages not recorded within the time required remain valid as against the mortgagor, but are postponed to all other liens created or * * * purchases made prior to the actual record of the mortgage," a chattel mortgage executed by a merchant in good faith more than four months prior to his bankruptcy, when both he and the mortgagee believed him solvent, and with the express agreement that he should buy no more goods on credit, is not invalid as preferential, because not recorded until within the four months, but will not be given priority over a debt created by the bankrupt before it was recorded.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. ☞184.]

5. BANKRUPTCY ☞178—LIENS—CHATTEL MORTGAGE.
   Bankr. Act July 1, 1898, c. 541, § 47a (2), 30 Stat. 557, as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1913, § 9631), by

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

clothing the trustee with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings, does not affect the validity of a chattel mortgage executed more than four months prior to the bankruptcy, and recorded within the four months period, but prior to the bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 221, 264–274, 283, 284; Dec. Dig. ☞178.]

In Bankruptcy. In the matter of J. H. Virgin, bankrupt. On review of decision of referee allowing a mortgage of the Commercial National Bank as a prior lien. Modified.

Feagin & Hancock and R. D. Feagin, all of Macon, Ga., for trustee.

Mallary & Wimberly and R. S. Wimberly, all of Macon, Ga., for certain creditors.

Hardeman, Jones, Park & Johnston and Orville A. Park, all of Macon, Ga., for American Nat. Bank, liquidating agent of Commercial Nat. Bank.

SPEER, District Judge. The question before the court involves the validity of a mortgage to secure $7,500. This was executed by Mr. Virgin, at the time a dealer in jewelry. It was given to the Commercial National Bank to secure the amount named, and covered the entire stock of merchandise of the mortgagor. At the time, which was more than four months antecedent to bankruptcy, Mr. Virgin was on the verge of insolvency. It is not made plain that this was known to him or to the Commercial National Bank, the mortgagee. The mortgage was, indeed, made to obtain the sum involved in order that it might be paid on the existing debts of Mr. Virgin's creditors. This was done. It is true that Mr. Virgin requested the bank not to record the mortgage. It is equally true that no such promise was made him. To the contrary, it was expressly stipulated, contemporaneously with the creation of the debt, that he should make no further purchases on credit, and should reduce his stock as far as possible. Subsequently he did, however, make certain additional purchases, which it is stated amounted to about $500. The Commercial National Bank, becoming involved, transferred its assets and other values to the American National Bank, which undertook the liquidation of the Commercial. Mr. Virgin now applied to the American National Bank for additional credit. This was declined him, and the Commercial was directed by the American to proceed to collect the debt. The mortgage was recorded on one day, and the next the proceeding in bankruptcy was filed. The trustee now assails the mortgage as defectively executed, as a preference to the Commercial National Bank, and as fraudulent against the general creditors. The referee, after full hearing, has passed on all of these questions, and has filed a report negativing them, which is noteworthy for clearness and completeness. Exceptions thereto have been filed by the trustee, and thus the issues are presented.

[1] The execution of the mortgage cannot, we think, be declared invalid for the reason assigned, namely, that it was attested by a clerk in the Commercial National Bank, who was also a notary public. Said

the Georgia Court of Appeals in Betts Evans Trading Co. v. Bass, 2
Ga. App. 718, 721, 59 S. E. 8, 9:

"We do not see that a clerk, who has no interest conditional upon the
profits, might not, as notary public, attest deeds, mortgages, or conditional
bills of sale in behalf of his employer, or that a cashier or other officer of a
bank, who owns no stock therein, might not do the same thing." The court
adds, "though this would be a doubtful propriety."

The view of the state court as to validity, and not propriety, must
be regarded as controlling here.

[2, 3] Nor can we assent to the contention of the exceptors that the
notary must attach a formal certificate of his acknowledgment to the
mortgage.

"Attestation and acknowledgment are different acts. Attestation is the
act of witnessing the actual execution of a paper and subscribing one's name
as a witness to that fact. Acknowledgment is the act of a grantor in going
before some competent officer and declaring the paper to be his deed." White
v. Magarahan, 87 Ga. 217, 219, 13 S. E. 509, 510.

See, also, Baxley v. Baxley, 117 Ga. 60, 43 S. E. 436.

This rule of the Georgia court is expressive of the general law.

"The act of witnessing an instrument of writing at the request of the party
making the same and subscribing it as a witness is attestation." Bouvier's
Law Dictionary, title "Attestation."

See, also, 1 Words and Phrases, page 628.

[4] Nor is the contention maintainable that the mortgage itself is
altogether void because it was preferential. It was given for an actual
loan of $7,500. There was no intention to create a preference. The
facts indicate that both Mr. Virgin and the Commercial Bank be-
lieved that he was solvent. The mortgage was executed more than
four months prior to bankruptcy, and was actually recorded before
bankruptcy, though within four months. So far from there being an
agreement or tacit understanding that the mortgage was to be with-
held from record to the injury of subsequent creditors, it was ex-
pressly stipulated that no subsequent credit should be obtained. Now
the Code of Georgia provides:

"Mortgages not recorded within the time required remain valid as against
the mortgagor, but are postponed to all other liens created or obtained, or
purchases made prior to the actual record of the mortgage." Code 1910, §
3260.

There are many authorities in support of this statutory principle. In
re Williams (D. C.) 120 Fed. 542; Doody Co. v. Adams, 123 Fed. 1007,
58 C. C. A. 682; Robinson v. Woodmansee, 80 Ga. 249, 4 S. E. 497;
Dickenson Trustee v. Stults, 120 Ga. 632, 48 S. E. 173. The Fifth
Circuit Court of Appeals has held that:

"Neglect to promptly record a mortgage is not of itself fraudulent as
against other creditors of the mortgagor." Bean v. Orr, 182 Fed. 599, 105 C.
C. A. 137.

See, also, Meyer Bros. Drug Co. v. Pipkin Drug Co., 136 Fed. 396,
69 C. C. A. 240.

This was a Texas case, where the provisions of the statute are
identical with those of Georgia. Besides, the execution of the mort-

gage, which was made in entire good faith, antedated the preferential period.

[5] Nor does the amendment to the Bankruptcy Law of 1910, which clothed the trustee with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings (paragraph 47a, as amended) change the status. The trustee could not have any lien of any sort before he became trustee, and before that date the mortgage was recorded, and is therefore prior to any lien this amendment created. See In re Jacobson & Perrill (D. C.) 200 Fed. 812. There it was held:

"The lien of a bankrupt's trustee conferred by the Bankruptcy Act as amended in 1910 does not relate back to a period four months prior to the institution of bankruptcy proceedings, nor can it antedate the institution of such proceedings."

See, also, Keeble v. John Deere Plow Co., 190 Fed. 1019, 111 C. C. A. 668.

And again by the Circuit Court of Appeals for the Fifth Circuit, it was held:

"Where the mortgage was given for a valid consideration, and not to hinder, delay, or defraud the creditors, and not having been withheld from record with fraudulent intent, and having been recorded before the lien of the bankrupt's trustee attached, it was valid against him." Anderson v. Chenault; 208 Fed. 400, 125 C. C. A. 616.

An attempt to review this case, originally decided in this district, was denied by the Supreme Court of the United States, 235 U. S. 700, 35 Sup. Ct. 201, 59 L. Ed. ——.

In view of these considerations, we must hold that in the main, the decision of the referee must stand. It is, however, true that a bankruptcy court is a court of equity. In such a court it is competent, as between the parties before it, to afford redress to those who have been injured, where one party with a full opportunity to avoid the result has put it in the power of another to do injury to a third. The facts here seem to justify the application of this principle. It is true that the Commercial Bank declined the request of Mr. Virgin to withhold the mortgage from record. It is true that an agreement was reached that he should obtain no additional credits, and that he should pay cash for everything bought. But the mortgage was not in fact recorded. In fact, additional purchases, seemingly not in large amount, were made on credit. Had record been made, this would have been impossible, or, if possible, the vendor would have had at least constructive notice. It seems, therefore, that the creditors whose debts were created after the execution of the unrecorded mortgage, and before the actual record, are entitled to an equity equivalent to that of the mortgagee. This seems plain from the Georgia statute (Code 1910, § 3260), supra:

"Mortgages not recorded within the time required remain valid as against the mortgagor, but are postponed to all other liens created or obtained, or purchases made prior to the actual record of the mortgage."

This was the rule established by the Circuit Court of Appeals for the Fifth Circuit, in Clayton v. Exchange Bank of Macon, 121 Fed.

630, 57 C. C. A. 656, opinion by the late Judge Shelby, cited in Re' Jacobson & Perrill (D. C.) 200 Fed. 812, decision by District Judge Newman. Said that learned judge on page 817:

"A mortgage may be free from fraud in the beginning and may become fraudulent by the conduct and acts of the parties afterwards. Although Goldstein Bros. took this mortgage in good faith, for a present consideration at the time it was taken, their subsequent action, or rather their nonaction and their silence when they should have spoken, must, in my opinion, render this mortgage invalid as against credtitors who sold goods and put them in the bankrupt stock before the record of the mortgage and without the knowledge of the existence of the same."

There Judge Newman doubtless used the word "fraudulent," because he adds:

"I think it is perfectly clear from this record that the mortgage was intentionally withheld from record."

Here it is not necessary to impute fraud. It is sufficient to say that the nonaction of the mortgagee, the bank, in its failure to record the mortgage, will be presumed to have misled the creditors who actually sold to the mortgagor between the execution of the mortgage and the date of its record. Therefore such creditors are entitled to prorate in the distribution of the assets on equal terms with the mortgagee and the bank, which is its liquidating agent.

Therefore a decree will be ordered directing the affirmance of the referee's findings, save as to the creditors of this class. A re-reference will also be directed, and the refereee directed to ascertain the amount of such valid claims and permit the holders to prorate equally with the bank in the application of the values arising from the sale of the mortgaged assets.