SULLIVAN *v.* GINSBERG, trustee.

No. 10864.   August 6, 1935.

*Winfield P. Jones* and *Carroll Payne Jones,* for plaintiff in error.
*W. L. Bryan* and *Paul Ginsberg,* contra.

BELL, Justice.   Paul Ginsberg, as trustee in bankruptcy of Brandimist Inc., brought a suit in equity against W. R. Sullivan, to cancel certain mortgages executed by Brandimist Inc., before its bankruptcy, to Sullivan, and covering described personal property, 'and to avoid a sale of such property made by the defendant to himself under a power of sale, and also to recover the alleged value of the property for the benefit of creditors of the bankrupt.   The defendant filed a general and special demurrer, which the court overruled, and he excepted.   The suit was founded upon. the theory that the transactions between the bankrupt and the defendant were fraudulent as to creditors, and the defendant by his demurrer insisted that the allegations were insufficient to show fraud as against

either existing or future creditors. The defendant also contended that the plaintiff had an adequate remedy at law by a suit in trover or an action for damages. The demurrer contained numerous special grounds calling for more specific allegations, but only two of these grounds were mentioned in the brief filed for the defendant, the plaintiff in error in this court.

The petition alleged the following: Brandimist Inc. was adjudicated a bankrupt January 21, 1933, and Paul Ginsberg was made trustee and qualified as such in February following. W. R. Sullivan was elected a director of the corporation in January, 1932, and served as such until January 3, 1933. "The bankrupt, Brandimist Inc., transferred certain personal property hereinafter described to W. R. Sullivan, the defendant herein, for the purposes of hindering, delaying, defrauding the creditors of said Brandimist Inc., existing at the time of such transfer, which intent and/or intent on the part of said Brandimist Inc. was known by the said defendant, W. R. Sullivan, and which said transfer was void both under the laws of Georgia and under the bankruptcy act." On or about July 11, 1932, the corporation had become insolvent, and this fact was known to Sullivan and his codirectors and officers of the corporation. An agreement was entered into between Sullivan and the other directors, whereby he agreed to finance the company for a period of 60 days, "and it was agreed that the president of the corporation was authorized to execute notes in settlement of the advances which the said Sullivan purported to make, and blanket authority was given to the said president to secure the said notes with any papers required by the said W. R. Sullivan. The said advances were to run up to the amount of $10,000 by indorsement or otherwise. Pursuant to this agreement, a series of notes in amounts and dates respectively as follows were executed by the bankrupt corporation to the order of W. R. Sullivan, and a chattel mortgage was executed covering the following personal property: Note for $3000 dated July 15, 1932, due October 1 after date, secured by 'all Brandimist flavoring now finished and sufficient for the manufacture of 29,000 gallons of syrup, the machinery used in manufacturing syrup, consisting of two 1000-gallon tanks, one 100-gallon tank, and syrup pump, and sixty 50-gallon barrels of finished Brandimist syrup, which are now in the process of being manufactured, and for better identification each barrel is marked with an

'S.' All located at 392 Spring St. N. W., Atlanta, Ga.'" Other notes were executed by the bankrupt to Sullivan from the date of August 2, 1932, to September 26, 1932, in various amounts stated, each reciting in effect that it was to have the same security as that described in the note of July 15, 1932, for $3000. The notes together aggregated about $12,000.

On December 30, 1932, the defendant sold all of the property under a power of sale contained in the original mortgage, and became the purchaser at a nominal sum. After this sale the defendant took possession of the property and converted the same to his own use, and has sold, transferred, and conveyed the same to parties, and on terms, unknown to petitioner, and the same is "now beyond defendant's control." The reasonable value of the property so converted was the sum of $15,000. "That the aforesaid advances, transfers, and/or encumbrances were given with intent and purpose on the part of the bankrupt to hinder, delay, and/or defraud its creditors, and that such intent was known to the said W. R. Sullivan, and was participated in by the said W. R. Sullivan; that this agreement entered into by and between the corporation and the said W. R. Sullivan amounted to a conspiracy to hinder, delay, and defraud the creditors of said bankrupt corporation. Complainant therefore alleges that such purported conveyances, transfers, and/or encumbrances and sales are null and void, and that the same should be canceled by this court of equity and held for naught, and that the defendant should be required to account for the value of all the said property." "It was agreed, however, by and between said W. R. Sullivan and the officers and directors of the bankrupt corporation that said chattel mortgages would not be placed of record, in order that the same might be concealed from the creditors represented by the trustee herein, who were advancing credit to the corporation from time to time on the faith and credit of the assets owned by the corporation and supposed to be held free from all liens and encumbrances." "It was understood by and between W. R. Sullivan and the officers and directors of the bankrupt corporation that the said chattel mortgages would not be placed of record, in order that the credit of the corporation would not be disturbed, and that the same would be concealed from the creditors who then had outstanding indebtedness, so that such creditors might be induced by the corporation to

forego any immediate right of action against the corporation and be induced to renew and/or extend the time of payment of their indebtedness; and it was further understood and agreed that the mortgages would be not recorded, so that the credit of the corporation would not be lessened or destroyed by the recordation of such mortgages, so that the corporation might secure additional advances from creditors subsequent to the date of the execution of the various notes and mortgages, as above set out." The petition listed the names of numerous creditors who had proved their claims in bankruptcy, and showed the amounts due to each of these creditors, both before and after July 11, 1932, the date of the alleged agreement between the corporation and Sullivan. The plaintiff prayed that the transfers, conveyances, sales, and encumbrances be declared null and void as against the plaintiff and the creditors represented by him; for judgment in the sum of $15,000, the alleged value of the property; and for general relief.

The bankruptcy act provides as follows: "The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a bona fide holder for value. For the purpose of such recovery any court of bankruptcy as defined in this title, and any State court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction." U. S. C. A. title 11, § 110 (e). In *Hunt* v. *Doyal*, 128 *Ga.* 416 (57 S. E. 489), it was held that "this right of the trustee extends to all transfers made by the bankrupt prior to the adjudication, in fraud of the rights of his creditors, without reference to whether such transfers are within four months prior to the adjudication or not." See also *Beasley* v. *Smith*, 144 *Ga.* 377 (4) (87 S. E. 293). The question whether the transactions between Brandimist Inc. and Sullivan were fraudulent as to creditors of the former will be determined by the local law. Lloyd *v.* Fulton, 91 U. S. 479, 485 (23 L. ed. 363); Anderson *v.* Gray, 284 Fed. 770 (4). The Code of Georgia provides that the following, among other acts by debtors, shall be fraudulent in law against creditors and others, and as to them null and void: "Every con-

veyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking. A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid." Code of 1933, § 28-201(2). The petition alleged in effect that the contracts here in question were made with the intention on the part of the corporation to delay and defraud its creditors, and that such intention was known to Sullivan. The averments as to such fraud by the parties were not defeated by other allegations of fact contained in the petition; and this is true even though it appeared that large sums of money were advanced to the mortgagor by Sullivan. The statute, as quoted, contains no exception in favor of a contract based upon a valuable consideration, where it was executed with fraudulent intent and such intention was known to the party taking. The petition therefore was sufficient to show the mortgages void as to creditors whose debts were in existence at the time of their execution. *Conley* v. *Buck*, 100 *Ga.* 187 (2) (28 S. E. 97); *McLendon* v. *Reynolds Grocery Co.*, 160 *Ga.* 763, 766 (129 S. E. 65).

Nor do the allegations fail to show fraud as against subsequent creditors. The transactions would not be void as to future creditors unless the parties thereto entertained "the actual intention of defrauding such subsequent creditors." *Almand* v. *Thomas*, 148 *Ga.* 369 (6) ('96 S. E. 962); *First National Bank of Cartersville* v. *Bayless*, 96 *Ga.* 684 (23 S. E. 851); *Lane* v. *Newton*, 140 *Ga.* 415 (2) (78 S. E. 1082); *Cohen* v. *George*, 149 *Ga.* 701 (101 S. E. 803); *Duncan* v. *Freeman*, 152 *Ga.* 332, 334 (110 S. E. 5). But the petition alleged an agreement between the parties to withhold the mortgages from record in order that "the credit of the corporation would not be lessened or destroyed by the recordation of such mortgages, so that the corporation might secure additional advances from creditors subsequent to the date of the execution of the various notes and mortgages;" and the petition, properly construed as a whole, alleged that this agreement constituted a part of the general transaction, affecting the notes and mortgages from the time of their execution. In *Robinson* v. *Woodmansee*, 80 *Ga.* 249 (6) (4 S. E. 497), the trial judge instructed the jury that if there was an understanding between the mortgagor and the mortgagees,

that the instruments should be kept off the record for the purpose of protecting the financial credit of the mortgagor, the mortgages would be fraudulent as to all persons who thereafter extended credit to him. This charge was held to be erroneous, because "it was not, as a matter of law, fraudulent to agree not to record the mortgages," it being a question for the jury as to what the intention was— "whether the mortgages were given by the debtor for the purpose of hindering, delaying, or defrauding his creditors," and whether, if so, the mortgagees knew of such intention or had "notice or grounds for reasonable suspicion." Under that decision the petition here was sufficient as a pleading to show fraud as against subsequent creditors, and to carry the case to the jury on the introduction of supporting evidence. See, in this connection, Clayton v. Exchange Bank, 121 Fed. 630; Fourth National Bank v. Willingham, 213 Fed. 219 (2); Hawkins v. Dannenberg, 253 Fed. 529. This case differs on its facts from the case of Martin v. Commercial Bank, 245 U. S. 513 (38 Sup. Ct. 176, 62 L. ed. 441). The court in that case was not dealing with the sufficiency of a pleading, but the rulings were based upon a finding, sustained by evidence, that the agreement to withhold the mortgage from record was not fraudulent. In the instant case the averments of the petition were sufficient to show that the mortgages and the other transactions between the bankrupt and the defendant were fraudulent, and voidable by the trustee, not only as to creditors whose claims were in existence at the time, but also as to those who extended credit afterwards. The petition contained some allegations, which have not been set out in the foregoing statement, whereby the transactions between the defendant and the corporation were attacked as preferences under the bankruptcy act. We have not deemed it necessary to deal with this phase of the case, since, regardless of any question as to preference, the allegations were sufficient to show that the transactions were voidable on the ground of fraud.

■ The petition was not subject to demurrer upon the ground that the plaintiff had an adequate remedy at law. If the plaintiff had sought to recover damages only, an action at law might have been a complete and adequate remedy; but, in addition to this, the plaintiff substantially prayed for a cancellation of the mortgages in question, and thus invoked relief which could be granted only by a court of equity. Especially is this true since the cancellation was

sought on the ground of fraud. *Ehrlich* v. *Shuptrine,* 117 *Ga.* 882 (45 S. E. 279); *Gilmore* v. *Hunt,* 137 *Ga.* 272 (73 S. E. 364); Code of 1933, §§ 37-701, .37-709. These rulings are not contrary to the decision in Schoenthal *v.* Irving Trust Co., 287 U. S. 92 (53 Sup. Ct. 50, 77 L. ed. 185). Moreover, since the procedure act of 1887 a suit brought in a superior court is not subject to dismissal upon the ground that the plaintiff has a complete and adequate remedy at law, if it states a cause of action either for legal or equitable relief. *DeLacy* v. *Hurst,* 83 *Ga.* 223 (5) (9 S. E. 1052); *Gillis* v. *Hilton & Dodge Lumber Co.,* 113 *Ga.* 622 (2) (38 S. E. 940); *Booth* v. *Mohr,* 122 *Ga.* 333 (50 S. E. 173).

Seemingly, a trustee in bankruptcy could not recover a money judgment, but instead should seek a restoration of the property where it may be restored by the fraudulent transferee; but the plaintiff here alleged that the defendant transferred and conveyed the property to parties unknown, and that the same is now beyond defendant's control. In these circumstances it would not be inappropriate to allow a judgment for such damages as the creditors may have sustained, not exceeding the value of the property. Gray *v.* Brunold, 140 Cal. 615 (74 Pac. 303); Bonnie *v.* Perry, 117 Ky. 459 (78 S. W. 208).

■ The plaintiff's allegations to the effect that an agreement was made between Sullivan and the directors of the corporation, whereby the former "agreed to finance the company for a period of sixty days, and it was agreed that the president of the corporation was authorized to execute notes in settlement of the advances which the said Sullivan purported to make, and blanket authority was given to the said president to secure the said notes with any papers" required by him, were demurred to specially upon the ground that the terms and conditions of such agreement were not stated. There was no merit in this demurrer. The defendant also demurred specially upon various grounds to the plaintiff's averments touching the agreement to withhold the mortgages from record. So far as these grounds of demurrer may have contained merit, they were cured by a subsequent amendment, and there was no error in overruling the same. The court did not err, for any reason urged, in overruling the demurrers.

*Judgment affirmed. All the Justices concur.*