25773.  TITSHAW v. CARNES, Guardian.

ARGUED MAY 11, 1970—DECIDED JUNE 8, 1970.

*Alton T. Milam,* for appellant.
*Noland & Coney, John L. Coney,* for appellee.

MOBLEY, Presiding Justice. This is an appeal from a judgment denying a motion for new trial on the general grounds. Enumerated as error is that judgment.

This case was previously before the Court of Appeals (*Titshaw v. Carnes,* 115 Ga. App. 216 (154 SE2d 302)), and this court (*Titshaw v. Carnes,* 224 Ga. 57 (159 SE2d 420); and *Carnes v. Titshaw,* 224 Ga. 612 (163 SE2d 728)). In the latter case, this court held that the petition, as amended, stated a cause of action to set aside two deeds procured by Titshaw from Logan.

The case was tried before a jury, which found in favor of the plaintiff (appellee here). Since the appeal is from a judgment denying the motion for new trial on the general grounds, and the trial judge approved the verdict, "the sole question for determination by this court is whether there is any evidence sufficient to authorize it." *Adler v. Adler,* 207 Ga. 394, 405 (61 SE2d 824). See also: *Knox v. Knox,* 213 Ga. 677 (1) (101 SE2d 89); *Walker v. State,* 216 Ga. 474 (2) (117 SE2d 156); *Byck v. Lawton,* 218 Ga. 858, 864 (131 SE2d 176).

The pertinent allegations of the petition, as amended, and the rulings of this court will be found in the previous decisions of this court (224 Ga. 57, and 224 Ga. 612, supra) and will not be repeated here in detail.

The petition alleged great inadequacy of consideration in the sale of the property for $60 per acre, when it had a value in excess of $1,000 per acre, and that there was great disparity of mental ability of the parties in contracting the sale, which, under the decision in 224 Ga. 612, supra, may justify a court of equity in setting aside a sale of the property or other contract. *Code* § 37-710.

While there was some conflict in the evidence as to the mental capacity of the grantor, Clark Logan, and the grantee, Ray Golden Titshaw, the evidence was sufficient to support the verdict of the jury.

The parties were very nearly the same age, about 71, but there was an abundance of evidence from responsible people to the effect that Logan was very feeble at the time he executed the deeds, was suffering from Parkinson's disease, was a recluse who lived alone in a small hut in the country, in filthy, squalid conditions, was himself dirty, with his face, hands, and body covered with sores and caked with dirt, and that he was feeble of mind as well, and incapable of managing his business affairs.

A witness testified that, "Mr. Titshaw handled Clark in the way you would handle an infant or a child that just wasn't capable of looking after any type of business himself," and did everything for him in a business way and would not let him handle any of it himself, treated him much like a child.

There was no evidence that Titshaw was weak of mind or lacking in mental capacity at the time he procured the deeds. It appears that Titshaw procured an option from Logan for sale of the property for $72,000; that after guardianship proceedings were brought, Titshaw told the ordinary that Logan needed a guardian. He asked the ordinary what he would allow him for his option, and the ordinary's reply was "not . . . a red cent." It was shortly after this that Titshaw brought Logan to Atlanta to a lawyer, who prepared a deed conveying 10 acres of the property to Titshaw, and in a few days had him execute a second deed conveying 62 acres, the remainder of his land.

The deeds showed, according to the stamps, a consideration of $2,500 for the 10-acre tract, and $1,600 for 62 acres, whereas the total consideration paid by Titshaw was $600.

The evidence was sufficient to show a great disparity of mental ability of the parties in contracting the sale, and great inadequacy of consideration, and justified the conclusion that Titshaw fraudulently procured Clark's property, worth $72,000 or more, for the tiny sum of $600.

*Judgment affirmed. All the Justices concur.*